IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 26-70331 |
| American Petroleum Carriers, LLC, | § | |
| | § | CHAPTER 11 (SUBCHAPTER V) |
| Debtor-in-Possession. | § | |

---

DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363,
(III) SCHEDULING A FINAL HEARING, AND
(IV) GRANTING RELATED RELIEF

---

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

TO THE HONORABLE EDUARDO V. RODRIGUEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

American Petroleum Carriers, LLC, the debtor and debtor-in-possession (the "Debtor"), respectfully files this Emergency Motion (the "Motion") for entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules"), authorizing the Debtor to use cash collateral on an interim and final basis and granting adequate protection. In support of this Motion, the Debtor respectfully states as follows:

I. STATEMENT OF DETAILED EMERGENCY & DATE BY WHICH RELIEF IS NEEDED (Pursuant to BLR 9013-1(i))

1. Emergency Justification: The Debtor is a commercial motor carrier operating specialized freight and petroleum transport tractors and trailers. Operations require daily and uninterrupted cash outlays for bulk commercial diesel fuel (run-rate of ~$18,500/week), automated toll replenishments, contract driver/operator settlements, and vehicle insurance. The Debtor's cash balances and customer receivables are subject to asserted blanket security interests and merchant cash advance liens. In the absence of an immediate interim order authorizing the use of cash collateral, the Debtor will be legally prohibited from disbursing funds to purchase fuel, dispatch drivers, or make route deliveries on Monday morning.
2. Date by Which Relief is Needed: Pursuant to BLR 9013-1(i), the Debtor specifies that interim relief is critically required by Tuesday, October 6th, 2026, at 5:00 p.m. Central Time.

II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and procedural predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 4001-1 and 9013-1.

III. BACKGROUND

6. On October 2, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, electing treatment under Subchapter V. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1182 and 1184 of the Bankruptcy Code.

7. No trustee, examiner, or statutory committee of creditors has been appointed in this case, other than the Subchapter V Trustee appointed pursuant to 11 U.S.C. § 1183.

8. The Debtor is an active commercial motor carrier, headquartered in McAllen, Texas. Continuous operation of the fleet is vital to maintaining customer accounts, preserving the enterprise's going-concern value, and funding a confirmable Subchapter V plan of reorganization.

IV. DEBTOR’S CASH COLLATERAL AND ASSERTED LIENS

9. As of the Petition Date, the Debtor maintained depository cash balances of approximately $20,000.00 and ongoing post-petition accounts receivable generated from customer freight transportation services.

10. Various financial institutions, secured equipment financers, and working-capital funding entities may assert liens upon, security interests in, or claims against the Debtor's cash,

deposit accounts, and accounts receivable (collectively, the "Cash Collateral"), including:

a. Operating Lines of Credit & MCA Lenders: OnDeck Capital / ODK Capital LLC, QuickBridge / Intuit Financing, Redwood Business Loans LLC, Forward Financing, Fantastic Funding, Fund Me Fast, CFG Merchant Solutions, and Simmons Capital Partners;

b. Secured Equipment Lenders: Navistar Financial Corporation, BMO Bank N.A., Leaf Financial, Sumitomo Mitsui Finance & Leasing Co., Ascentium Capital; and

c. The United States Small Business Administration (SBA).

11. The Debtor does not, by this Motion, concede or admit the validity, extent, perfection, or priority of any lien asserted against its cash or accounts receivable, and expressly reserves all rights under Chapter 5 of the Bankruptcy Code.

## V. CRITICAL NEED FOR IMMEDIATE USE OF CASH COLLATERAL

12. The Debtor has an immediate and critical need to use Cash Collateral to maintain ordinary-course freight operations, preserve fleet value, and avoid immediate, irreparable injury to the estate pending a final hearing.

13. Specifically, the Debtor must immediately fund:

a. Commercial Diesel Fuel and Tolls: Hauling operations require continuous diesel fuel purchases (projected at $18,000–$19,000/week) and electronic toll account replenishments;

b. Contract Drivers & Operator Settlements: Weekly settlements to commercial drivers and essential operational staff to ensure ongoing delivery of contracted freight;

c. Fleet Commercial Insurance: Vehicle liability, collision, and cargo insurance premiums required by federal DOT/FMCSA regulations, 11 U.S.C. § 1112, and BLR 4002-1(g); and

d. Critical Vehicle Repairs & Maintenance: Routine maintenance to keep commercial tractors roadworthy and compliant with safety standards.

14. If the Debtor is prohibited from using its cash and incoming receivable proceeds on an interim basis, operations will immediately halt, drivers will disperse, freight contracts will terminate, and the going-concern value of the business will be irrevocably destroyed.

VI. PROPOSED ADEQUATE PROTECTION

15. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Debtor proposes to provide the following adequate protection to all secured creditors asserting a valid, perfected interest in the Cash Collateral:

a. Replacement Liens: To the extent of any diminution in value of a creditor's validly perfected pre-petition interest in Cash Collateral resulting from the post-petition use thereof, each such creditor is granted a replacement security interest and lien under section 361(2) on the Debtor's post-petition accounts receivable and proceeds to the same extent, priority, and validity as existed on the Petition Date;

b. Maintenance of Insurance: The Debtor shall maintain commercial fleet and comprehensive property/casualty insurance coverage on all operating equipment and collateral, naming secured lenders as loss payees;

c. Budget Compliance & Variance: Debtor will use Cash Collateral strictly in

accordance with the 4-Week Operating Budget attached hereto as **Exhibit "A"**, subject to a permissible variance of fifteen percent (15%) on an aggregate basis; and

d. Financial Reporting: Debtor will deliver to the U.S. Trustee, the Subchapter V Trustee, and any requesting secured creditor copies of its Monthly Operating Reports and weekly cash reconciliations upon request.

VII. REQUEST FOR EMERGENCY PRELIMINARY (INTERIM) HEARING

16. Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rules 4001-1(b) and 9013-1(i), the Court may conduct an expedited preliminary hearing on a motion to use cash collateral and authorize the use of that amount of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

17. The Debtor requests that this Court schedule an emergency interim hearing by no later than Tuesday, October 6, 2026, to authorize the interim use of Cash Collateral in accordance with the attached Budget, and schedule a final hearing within twenty-one (21) days thereafter pursuant to Bankruptcy Rule 4001(b)(2).

VIII. PRAYER

WHEREFORE, the Debtor respectfully requests that this Court enter an interim order:

1. Authorizing the Debtor's use of Cash Collateral on an interim basis in accordance with the Budget attached as **Exhibit "A"**;
2. Granting replacement liens and adequate protection as set forth herein;
3. Scheduling a final hearing on this Motion pursuant to Bankruptcy Rule 4001(b)(2); and
4. Granting the Debtor such other and further relief as the Court deems just and proper.

Dated: October 2, 2026.

Respectfully submitted,

MARCOS D. OLIVA, PC
*/s/ Marcos D. Oliva*
Marcos D. Oliva
State Bar No. 24056068
223 W. Nolana Ave
McAllen, TX 78504-2500
Telephone: (956) 683-7800
Email: marcos@oliva.law
*Counsel for Debtor-in-Possession*

CERTIFICATE OF ACCURACY UNDER BLR 9013-1(i)

Pursuant to Local Bankruptcy Rule 9013-1(i) of the United States Bankruptcy Court for the Southern District of Texas, I, the undersigned counsel for the Debtor, hereby certify that I have reviewed the foregoing Emergency Motion, that I have made reasonable inquiry into the facts stated therein, that an emergency hearing is warranted, and that the factual statements contained in the Motion are accurate to the best of my knowledge, information, and belief.

*/s/ Marcos D. Oliva*
Marcos D. Oliva
Counsel for Debtor-in-Possession

CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2026, a true and correct copy of the foregoing Emergency Motion was served electronically via the Court's CM/ECF system on all parties registered to receive electronic notices in this case, and copies were served via electronic mail, facsimile, and/or first-class United States mail, postage prepaid, upon the Office of the United States Trustee, the Subchapter V Trustee, the Debtor's twenty (20) largest unsecured creditors, and all known secured creditors and parties asserting liens against the Debtor's Cash Collateral as set forth in the master service list attached to the Court docket.

*/s/ Marcos D. Oliva*
Marcos D. Oliva

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 26-70331 |
| American Petroleum Carriers, LLC, | § | |
| | § | CHAPTER 11 (SUBCHAPTER V) |
| Debtor-in-Possession. | § | |

4-Week Operating Cash Collateral Budget
(October 2026 Projections Derived from Historical Run-Rates)

| Cash Inflow / Outflow Category | Week 1 (Oct 2–Oct 9) | Week 2 (Oct 10–Oct 16) | Week 3 (Oct 17–Oct 23) | Week 4 (Oct 24–Oct 31) | 4-Week Total |
|---|---|---|---|---|---|
| Beginning Cash Balance | $78,402 | $83,152 | $98,902 | $114,152 | $78,402 |
| OPERATING RECEIPTS | | | | | |
| Freight Hauling & Transport Invoiced | $48,000 | $52,000 | $50,000 | $50,000 | $200,000 |
| Ancillary Hauling / Services | $4,500 | $5,000 | $5,000 | $5,500 | $20,000 |
| Total Cash Receipts | $52,500 | $57,000 | $55,000 | $55,500 | $220,000 |
| OPERATING DISBURSEMENTS | | | | | |
| Commercial Diesel Fuel | $18,000 | $18,500 | $18,500 | $19,000 | $74,000 |

| | | | | | |
|---|---|---|---|---|---|
| Contract Drivers / Operator Settlements | $13,500 | $14,000 | $14,000 | $13,500 | $55,000 |
| Tolls & Scale Fees | $1,250 | $1,250 | $1,250 | $1,250 | $5,000 |
| Tractor & Trailer Maintenance / Tires | $2,000 | $3,500 | $2,500 | $2,500 | $10,500 |
| Fleet Commercial Insurance Deposit/Pay | $7,000 | $0 | $0 | $0 | $7,000 |
| Factoring & Banking Operational Fees | $1,500 | $1,500 | $1,500 | $1,500 | $6,000 |
| Office Rent & Utilities | $1,750 | $0 | $0 | $0 | $1,750 |
| Statutory Subchapter V Trustee Reserve | $1,000 | $1,000 | $1,000 | $1,000 | $4,000 |
| Communications / Telematics / ELD | $750 | $0 | $0 | $0 | $750 |
| Miscellaneous Operating Reserve | $1,000 | $1,500 | $1,000 | $1,000 | $4,500 |
| Total Operating Disbursements | $47,750 | $41,250 | $39,750 | $39,750 | $168,500 |

| | | | | | |
|---|---|---|---|---|---|
| NET WEEKLY CASH SURPLUS | +$4,750 | +$15,750 | +$15,250 | +$15,750 | +$51,500 |
| Ending Cash Balance | $83,152 | $98,902 | $114,152 | $129,902 | $129,902 |